DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants Clarence O. Thomas and Van Helen Thomas (collectively "Thomas") appeal from a judgment of the Summit County Common Pleas Court that granted summary judgment in favor of Appellee Barberton Steel Iron, Inc. ("Barberton Steel") in this intentional tort action against Thomas's former employer. We affirm.
Thomas was employed by Barberton Steel for four years as a "core maker." His duties included operating and cleaning the core making machine, a machine that prepared a sand-mixture compound used to make molds. Thomas was required to clean the machine daily. This task involved reaching into the core making trough and scraping or chiseling the sand mixture that had hardened to the side of the trough. The cleaning was done, for safety reasons, with the machine turned off. Thomas had been instructed to turn off the power button on the machine ("Switch A") and, as an added precaution, to de-energize the machine by shutting off one of the power sources with a switch outside the room ("Switch B").[1] During the cleaning process, however, it was necessary to periodically turn the machine back on and run the auger to clear out the debris. Apparently to facilitate the frequent need to turn the machine off and on during this stage of the cleaning process, Thomas would often turn Switch B back on, re-energizing the machine, and leave it on throughout much of this process, and merely use Switch A to turn the machine on and off. Although this practice was contrary to his training, his superiors had had occasion to observe Thomas and did not take corrective action.
On July 28, 1993, Thomas was cleaning the core making machine and was in the process of chiseling the inside wall of the trough. While doing so, his chisel fell out of the air hammer and landed in the trough, near the auger. At this time, Switch B was turned on but Switch A, the power button on the machine, was turned off. As Thomas was reaching into the trough, the machine somehow activated[2] and Thomas's right arm was caught in the moving auger. Thomas's arm was amputated as a result.
Thomas brought this action against Barberton Steel, alleging an intentional tort to defeat the exclusivity bar of Workers' Compensation. Barberton Steel moved for summary judgment, asserting that Thomas could not prove the requisite "intent" on its part. The trial court granted summary judgment for Barberton Steel. Thomas appeals and assigns the following as error:
 I. THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS THERE EXISTED SUFFICIENT EVIDENCE, WHEN CONSTRUED IN A LIGHT MOST FAVORABLE TO APPELLANTS, TO PRECLUDE SUMMARY JUDGMENT.
 II. THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR IN ITS DETERMINATION THAT APPELLANTS FAILED TO DEMONSTRATE SUFFICIENT EVIDENCE OF AN EMPLOYER INTENTIONAL TORT PURSUANT TO THE SUPREME COURT STANDARDS SET FORTH IN VAN FOSSEN AND FYFFE.
We address the assignments of error together as both challenge the propriety of summary judgment for Barberton Steel. In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court.Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826,829. Pursuant to Civ.R. 56(C), summary judgment is proper if: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds could only find in favor of the moving party.
To establish the requisite "intent" to prove an intentional tort by his employer, Thomas was required to demonstrate:
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus (citations omitted).
Barberton Steel moved for summary judgment, contending, with evidentiary support, that Thomas could not establish any of the three Fyffe requirements. The trial court found that Thomas had failed to raise an issue of fact as to the second prong of Fyffe, the substantial certainty of harm to the employee. Because we agree with the trial court that this issue is dispositive, we will confine our discussion to the "substantial certainty" prong of the Fyffe test.
Barberton Steel asserted that it had no knowledge that this type of injury was substantially certain to occur. It supported its contention with evidence of the following facts:
 1. Thomas had been operating and cleaning the core making machine for four years without incident. He had not experienced any prior accident or occasions where the machine had inadvertently or accidentally turned on during the cleaning process.
 2. There had never been a prior incident of this type at Barberton Steel. A core making machine had never accidentally started while shut down for maintenance.
 3. Thomas had been trained to turn off both Switch A and Switch B prior to cleaning the machine.
 4. If Switch B had been turned off during cleaning, electricity could not have run through the machine and this accident would not have happened.
Thomas responded in opposition to summary judgment, contending that he could, in fact, establish that Barberton Steel knew that this accident was substantially certain to occur. He made the following allegations:
 1. He had not been thoroughly or adequately trained about shutting down all sources of electrical current that ran to the machine.
 2. He often cleaned the machine while Switch B was turned on, and his superiors had observed him cleaning the machine in this manner, yet had done nothing to correct his unsafe practice.
 3. Barberton Steel previously removed a safety device on the machine, a lid and "kill switch," that would have prevented this accident.
 4. Barberton Steel was cited with numerous OSHA violations that had a direct bearing on this accident.
Thomas's evidence failed to create an issue a fact as to whether Barberton Steel knew that this accident was substantially certain to occur. His first allegation was that he had been inadequately trained about how to de-energize or "lock out" the electrical current running to the core making machine. He presented evidence that there was another source of current to the machine that he had never been told about. Although Thomas's evidence might establish that he received inadequate safety training, he admits that he did know about Switch B and that he had been told to use it during the cleaning process. Moreover, Thomas presented no evidence to dispute the evidence of Barberton Steel that, if he had turned off Switch B prior to cleaning the machine, the machine could not have started and the accident would not have happened.
Thomas's second allegation was that he had cleaned the core making machine in this same manner in the past and had been observed doing so by his superiors, but they had done nothing to correct him. Although such action on the part of his employer may have amounted to negligence, it did not rise to the level of substantial certainty of injury. The evidence was undisputed that this "unsafe" procedure had never resulted in an injury or a single incident in which a core making machine accidentally started during a maintenance procedure. Thomas himself had performed this procedure, apparently in the same manner, hundreds of times without incident. The absence of prior accidents strongly suggests that injury from this procedure was not substantially certain to occur. Foust v. Magnum Restaurants, Inc.
(1994), 97 Ohio App.3d 451, 455.
Thomas's evidence failed to support his third allegation, that Barberton Steel had deliberately removed a safety device, a cover and "kill switch," that would have prevented this accident. We note initially that, even if Thomas could establish that Barberton Steel deliberately removed a safety device that would have prevented his injury, such evidence would be only one of several factors for the court to consider. Fyffe, supra, at paragraph three of the syllabus. Thomas failed, however, to establish either that the safety device was deliberately removed or that it would have prevented his injury. The only evidence Thomas pointed to regarding the removal of the cover and kill switch was his own deposition testimony and that of the former maintenance superintendent. Thomas's testimony was vague at best. He recalled that there used to be a cover and switch on the core making machine, but little more. The maintenance superintendent also had vague recollections of the cover and switch. He was not able to recall when it was removed or why.
The effectiveness of these former safety devices was also questionable. The maintenance superintendent explained that, the cover, when lifted, was designed to trigger the kill switch to disable the machine. He recalled that operators became frustrated with the safety device and disabled it by placing a wedge over the switch. He specifically recalled that Thomas was one of the operators that he had observed overriding the safety device so that he could run the machine with the lid open. Moreover, there was no evidence before the trial court that, even if the cover and kill switch were still on the machine and properly used, they would have sufficiently de-energized the machine so as to prevent this accident.
Thomas's evidence in support of his allegations of OSHA violations also fails to sufficiently support his claim. His evidence demonstrates that Barberton Steel was cited with numerous OSHA violations after the accident. The fact that the company was in violation of relevant safety standards is of no consequence; the company's knowledge of those violations is the determinative factor. See Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169,172; Frazier v. Royal Brass Mfg. Co. (1990), 70 Ohio App.3d 748,751-752. There was no evidence before the trial court to establish that the company was aware, prior to the accident, that it was in violation of OSHA standards. Although OSHA had cited the company in January of 1992 for failing to employ an adequate procedure for de-energizing the core making machine during maintenance procedures, the evidence demonstrates that the company had attempted to initiate such a procedure and had trained its employees after the OSHA citation. A training session was held that Thomas attended. Thomas admitted that he had been instructed to turn off Switch B prior to cleaning the machine.
Thomas's evidence, while it demonstrated many weaknesses in the company's safety practices, at best established negligence on the part of Barberton Steel. Something more egregious is required to establish the second prong of Fyffe. "[T]he mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe, supra, at paragraph two of the syllabus. The trial court did not err, therefore, in granting summary judgment in favor of Barberton Steel. Thomas's two assignments of error are overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ JOHN R. MILLIGAN
FOR THE COURT
BAIRD, P. J.
REECE, J.
CONCUR.
(Milligan, J., retired Judge of the Fifth District Court of Appeals, sitting by assignment pursuant to Article IV, § 6(C), Constitution.)
[1] The terms "Switch A" and "Switch B" will be used by this Court for ease and clarity of discussion.
[2] It has been hypothesized that Thomas may have leaned against the power button on the front of the machine, but the exact cause of the machine reactivating has not been established.